First Congregational Society in Raynham *et al. versus* The Trustees of the Fund &c. in Raynham.

This Court has jurisdiction of a suit in equity for enforcing the execution of a trust, notwithstanding the party seeking relief may have a remedy at law, especially if he is entitled to a discovery, or if the trustee is bound to state an account of the trust fund and its proceeds.

After a defendant in a suit in equity has answered and submitted to the jurisdiction of the Court, it is too late for him to object, that the complainant has a plain and adequate remedy at law.

Where a fund was raised by a town acting parochially, to be held in trust for the support of a minister, and subsequently a parish was organized in the town and a minister settled over such parish at the stipulated salary of $500, and the parish afterwards voted him the sum of $250 and the income of the fund, as his salary for the year then ensuing, but the trustees refused to apply the income to his support, it was *held*, that the minister was properly joined with the parish as a party to a suit in equity against the trustees to enforce the payment of such income by them ; and that the town should *not* be made a party to such suit, it having no interest in the fund after the organization of the parish.

This was a bill in equity, setting forth, that the town of Raynham was incorporated in 1731 ; that in the act of incorporation it was provided, that the town should, within three years, settle a learned, orthodox minister ; that the town continued to act as a municipality and parish until 1833, when they declined to act any longer parochially ; and that on the 19th of April, 1834, a parish was organized in such town agreeably to the statute, by the name of the First Congregational Society in Raynham.

The bill further set forth, that in 1796, the town, acting parochially, ordered a sale to be made of certain unappropriated floor room in their meetinghouse, in order to raise a fund for the support of a congregational minister ; that the proceeds of the sale were kept until March 1798, when an act was passed incorporating certain persons as trustees of such fund, and providing, that the proceeds thereof should be applied to the support of a teacher of piety, religion and morality, who should preach in the meetinghouse near the centre of the town, but that no appropriation should be made until the proceeds amounted to the sum of $200, annually ; that at the time when the act was passed, the society possessed a

meetinghouse near the centre of the town, and there was then no other meetinghouse in the town ; that within four years last past the society had caused the old meetinghouse to be taken down, and a new one to be built on the same lot of land, which lot they had then occupied more than sixty years ; and that in 1827, a society was organized in the town by the name of the Second Congregational Society in Raynham, which soon after erected a meetinghouse about a quarter of a mile distant from the one mentioned in the act.

The bill further set forth, that the board of trustees was organized and took possession of the fund ; that in 1816, the interest amounted to the sum of $ 200, and the trustees then applied the same to the support of Stephen Hull, a public teacher, then preaching in the meetinghouse, and so continued to apply the same so long as he remained such teacher ; that afterwards they applied the proceeds of the fund to the support of Enoch Sanford, his successor, who preached in the same meetinghouse, and who was one of the complainants in this suit ; that in 1833, the members of the parish having organized themselves as the First Congregational Society, and Mr. Sanford being their teacher, the trustees applied the interest of the fund to his support ; that the last appropriation for his benefit by the trustees was made on the 1st of October, 1834 ; that Mr. Sanford continued to be the teacher of piety, &c., preaching in the meetinghouse near the centre of the town, called and ordained by the society under a contract on their part to pay him the sum of $ 500 yearly ; that on the 9th of March, 1835, the society voted him the sum of $ 250 and the interest of the fund, together with the use of the parsonage, as his salary for the year then ensuing ; but that the trustees had wholly refused to pay over the interest of the fund to the society or to Mr. Sanford, though specially requested so to do.

The defendants, in their answer, admitted that from 1816 to 1834, the proceeds of the fund had been annually applied to the support of the minister preaching in the old meetinghouse and in a new one built in its place, but they averred, that such appropriation was uniformly made by virtue of annual votes of the town ; that the town had never voted, that

13 *

First Cong.
Soc. in
Raynham
*v.*
Trustees
&c.

the interest of the fund should be appropriated except as is before mentioned, and that no vote had been passed by the town on the subject since 1834 ; and they denied, that the town had ever declined to act in its parochial capacity, and averred, that in June 1836, the town filled a vacancy in the board of trustees.

The respondents further averred, that they did not know and could not set forth as to their belief, whether any society had been duly organized in the town, as the First Congregational Society, or whether any such society now existed ; that about the year 1837, another meetinghouse was erected in the town as near the centre as the old or new one before mentioned ; that a teacher of piety &c. had officiated in it hitherto, and that the persons worshipping therein claimed that the proceeds of the fund should be appropriated to his support ; and that they did not know, whether or not, any society had been duly organized as the Second Congregational Society in the town.

The respondents denied the jurisdiction of the Court, but submitted to the Court what disposition should be made of the fund, in case jurisdiction should be assumed by them.

The complainants filed the general replication.

The *St.* 1797, *c.* 80, by which the trustees of the fund were incorporated, provides, that whenever any vacancy happens among the trustees, the town shall, within three months, fill up the vacancy, and if the town neglects so to do, the trustees shall have power to fill up the vacancy ; and that the town " shall have full power from time to time to call said trustees to an account for their conduct in managing said fund ; and the estate of each trustee shall be liable to be taken in execution on any judgment against such trustees recovered by the said town, which is hereby authorized to commence and prosecute an action against said trustees or any of them, for any embezzlement or neglect of refunding moneys in their hands ; and the debt or damage recovered by the said town in any such judgment, shall be to and for the use aforesaid."

*Oct. 22d*         *Eddy* and *Colby*, for the complainants, to the point, that the Court had jurisdiction in equity over this bill, notwithstanding the provision contained in *St.* 1797, *c.* 80, giving a remedy

First Cong
Soc. in
Raynham
v.
Trustees
&c.

ny *action*, the complainants being entitled to a discovery and to an account, cited *Newhall* v. *Wheeler*, 7 Mass. R 198 ; *United States* v. *Myers*, 2 Brockenbrough, 516 ; *Fisher* v. *Ellis*, 3 Pick. 322 ; 1 Story's Eq. § 33, 80 ; *Bemis* v. *Upham*, 13 Pick. 169 ; and that it was too late to object that the Court had no jurisdiction in equity over the bill, on the ground, that the complainants had a plain and adequate remedy at law, *Underhill* v. *Van Cortlandt*, 2 Johns. Ch. R. 369 ; *Ludlow* v. *Simond*, 2 Caines's Cas. 1 ; *Livingston* v. *Livingston*, 4 Johns. Ch. R. 290.

*Warren, A. Bassett* and *Eliot*, for the respondents, to the point, that by the *St.* 1797, *c.* 80, the legislature provided a specific, plain and adequate remedy at law, and that where a statute gives a right and furnishes a remedy, that remedy must be pursued, cited *Gedney* v. *Tewksbury*, 3 Mass. R. 307 ; *Franklin Glass Co.* v. *White*, 14 Mass. R. 289 ; *Hinsdale* v. *Larned*, 16 Mass. R. 70 ; *Vinton* v. *Welsh*, 9 Pick. 87 ; that the town should have been joined as a party to the suit, Coop. Eq Pl. 33 ; *Gedney* v. *Tewksbury*, 3 Mass. R. 309 ; *East Sudbury* v. *Belknap*, 1 Pick. 520 ; *Brown* v. *Higgs*, 8 Vesey, 574 ; and that Mr. Sandford was not properly made a party to the suit, *Thompson* v. *Cath. Cong. Soc. in Rehoboth*, 5 Pick. 476.

WILDE J. delivered the opinion of the Court. This case *Oct. 24th.* has been argued on the facts stated in the bill and answer. The plaintiffs filed the general replication, but no evidence has been taken, and we understand by the remarks of counsel in the argument, that all the facts stated in the bill, and not denied in the answer, were intended to be admitted. We have accordingly so considered them.

The bill sets forth, that the town of Raynham, from the t.me of its incorporation in 1731, until 1833, acted as a municipality and parish ; that in 1796 the town, acting parochially, ordered a sale of certain unappropriated floor room in their meetinghouse, to begin a fund for the support of a congregational minister ; that the proceeds were kept until March 1798, when an act was passed, by which the trustees of the fund were incorporated ; and that it was provided in the act, that the fund should be applied to the support of a teacher of piety,

First Cong.
Soc. in
Raynham
*v.*
Trustees
&c.

who should preach in the meetinghouse near to the centre of the town. It is also averred in the bill and admitted in the answer, that the proceeds of the fund, from the year 1816 to 1834, were annually applied to the support of the minister preaching in such meetinghouse, and in a new meetinghouse built in its place ; but that the defendants have made no payment since that time. The bill then avers, that in 1833 the town declined to act parochially any longer ; and that thereupon, on the 19th of April, 1834, the parish organized itself, agreeably to the *St.* 1823, *c.* 106, by the name of the First Congregational Society in Raynham. The defendants deny, that the town has ever declined to act in its parochial capacity, and aver that, in June 1836, the town filled a vacancy in the board of trustees. The consent of the town, however, is not necessary to enable a parish or religious society to organize itself under the statute ; and whether the town declined to act parochially, previously to the organization, is quite immaterial.

Upon these facts, we think it manifest that the plaintiffs are entitled to the proceeds of the trust fund. The members of the plaintiff parish or society, attended public worship in the new meetinghouse built in the place of the meetinghouse mentioned in the act incorporating the trustees of the fund, the Rev. Mr Sandford, who is made a party in the suit, having long been, and still continuing to be, their minister and public teacher of piety, religion and morality ; and by the express words of the act, the proceeds of the trust fund were to be applied to the support of such a public teacher in that meetinghouse. On the organization of the First Congregational Society, it became the successor of the town, and entitled to the same right and interest in the trust fund which was originally vested in the town in its parochial capacity. The town, as a municipality, had no interest in the fund ; and no other religious society in the town except the plaintiffs, appear to have any title derived from the town. A society was organized in 1827, but it was organized under the name of the Second Congregational Society, and clearly had no right or interest in the fund ; nor does it appear, that it has ever claimed any. It is averred in the answer. that, in 1837, another society was formed, and that they erected a meetinghouse near the centre of the town ; that a teacher of

First Cong
Soc. in
Raynham
v.
Trustees
&c.

religion, piety and morality had officiated in it; and that the persons worshipping there had claimed the proceeds of the fund to be appropriated to his support. This claim is manifestly unfounded. The right of the town in the fund had vested in the plaintiff parish or society before that society was formed. On the whole, we are of opinion that the plaintiffs have a good right to have the proceeds of the fund appropriated as prayed for in the bill. Indeed the defendants' counsel have not urged any objection to the plaintiffs' right and title; but they rely on an objection to the jurisdiction of the Court and to the form of the bill. That the Court has jurisdiction of the subject matter of the bill, cannot be questioned. By the Revised Stat. *c.* 81, § 8, the Court have the power to hear and determine in equity " all suits and proceedings for enforcing and regulating the execution of trusts, whether the trusts relate to real or personal estate."

But the defendants' counsel contend, that the plaintiffs have a plain, adequate and complete remedy at law, and that for this reason the Court has no jurisdiction as a court of equity. This objection seems to have been made too late, after the defendants had answered the bill and submitted to the jurisdiction of the Court. If the Court has jurisdiction of the subject matter in dispute, any other objection to the jurisdiction of the Court should have been made without delay and at the earliest opportunity. *Ludlow* v. *Simond*, 2 Caines's Cas. 40.

There is, however, no foundation for the objection. The most appropriate remedy for enforcing the performance of all trusts is to be found in a court of equity. There may be cases where a party may have an adequate remedy at law for a breach of trust, but the cases are rare; and I am not aware of any case in which a court of equity has refused to enforce a trust on the ground that the plaintiff had an adequate remedy at law; certainly not, if the party seeking relief is entitled to a discovery, or if the trustee is bound to state an account of the amount of the trust fund and its proceeds, as the defendants are bound to do in the present case.

We think also there is no ground for the other objection made by the defendants' counsel, as to the supposed misjoinder and non-joinder of the proper parties. This objection does not

<div style="margin-left-note">First Cong. Soc. in Raynham v. Trustees &c</div>

appear to be raised by the answer ; for the answer concludes with the prayer, that if the Court should assume jurisdiction, they would direct what disposition should be made of the fund. We are of opinion, however, that the proper parties have been joined. Mr. Sanford is interested in the fund, and is entitled to the proceeds, by the vote of his society, as a part of his salary, and, certainly, was properly joined as a party ; and, as the town have no interest whatever in the fund or its proceeds, it is very clear it ought not to have been made a party.

*Defendants' objections to the bill overruled. Referred to a master, to take an account.*