Common Pleas Court of Cuyahoga County.

JAMES H. MCCALL, ET AL V. THE W. J. SCHOENBERGER CO.

Decided July 1, 1931.

*William Howell, R. L. Carr* and *H. E. Elliott,* for plaintiffs.

*George W. Spooner, W. B. Cockley, J. C. Reasner* and *W. J. Milde,* for defendants.

CORLETT, J.

The petition in this case was filed by James H. McCall, Frank X. Schaut and Charles E. Day, Trustees under the will of Daniel Miles, deceased, as plaintiffs, against The W. J. Schoenberger Company and The Cleveland Trust Company, defendants, plaintiffs praying that upon the hearing of this cause the property owned by defendant company be held and decreed to be subject to the trust created by the will of Daniel Miles, and that the right of the plaintiffs as trustees under the will of said Daniel Miles be adjudged and determined to be superior to any claims of the defendant, and that any rights of the defendant be adjudged to be subject to and inferior to the trust estate which plaintiffs claim was created under said will, and that there be adjudged and decreed a valid and subsisting trust in said property owned by the defendant company.

On the 11th day of October, 1823, Daniel Miles executed his will and the same was admitted to probate in the County of Cuyahoga and State of Ohio on May 30th, 1827, the records disclosing that Daniel Miles died on June 30th, 1824.

Daniel Miles died seized of about 40 acres of real estate in this county. This land now consists of about one hundred separate parcels of real estate in the City of Cleveland, valued at several millions of dollars. The parcel covered by this action was acquired by purchase by the defendant company, title being transferred by general warranty deed, dated April 25th, 1929.

The pertinent portions of the will of Daniel Miles are as follows:

"As to all the wordly goods wherewith God hath blessed me, I give and bequeath all my Estate, real and personal of every kind to my friends, Jonathan Fisher, John Shaw and Nehemiah Allen of Cuyahoga Co. aforesaid, to the survivors and survivor (as joint tenants and not as tenants in common) in Trust for the uses and purposes hereinafter mentioned.  *  *  *

"Item.  After satisfying all the before mentioned bequests and trust, my will is that all the before mentioned, the rest and residue of my Estate being in lands (or to be vested in real proporty, if any shall remain uninvested) shall be let out and leased to the best advantage for such terms or term as my said Trustees shall think best (not exceeding ten years) and that after payment of the necessary repairs and contingent expenses, the net income thereof be applied for the space of one hundred years from and after the year 1825 to the education of ten persons of my next and nearest relation, being the oldest of those between the age of ten and fifteen years, for whom application shall be made by residents of the State of Ohio.  And to prevent all difficulty as to the right application of the sums aforesaid and as to the persons entitled, my will is that the Judges or Members of the Bench of the Court of Common Pleas of Cuyahoga or a majority of them shall be perpetual umpires upon all questions, claims or contests respecting this trust, and that their award or awards of a majority of them shall be binding upon my said Trustees and shall be their sufficient authority and protection for all their acts. '

"Item.  And from and after the year 1925 my will is that the said net income be applied one half thereof to the support of common schools and the other half to the support of the Gospel in the Township of Newburgh aforesaid.  And to prevent doubts and contests as to that part intended for the support of the Gospel my will is that the same be paid for the benefit of such society or congregation of christians professing and teaching a belief in future rewards and punishments, as from year to year shall be most numerous.  The numbers to be determined by the number of male persons above twenty-one years of age who shall actually pay the sum of two dollars each or upwards annually and within the next preceding calendar year for the support of the public worship of such society or congregation.

"And it is likewise my will that the judges or members of the said Common Pleas Court have the like powers in all respects with respect to this share as to that for

Common Schools and in both cases they may and shall in all proper cases take sureties of the persons to whom the monies shall be paid over for a right application thereof.

"And to provide for a perpetual succession of Trustees for the purpose aforesaid my will is that as often as one or more of my said trustees shall die or decline the trust or remove out of Cuyahoga County to reside, the said judges or members of the Bench of the Court of Common Pleas of Cuyahoga County or a majority of them, may any time during a session or regular stated term of said Court, appoint a new Trustee or Trustees to whom, together with the former Trustee or Trustees, if any, and making three in all, my said Trust Estate shall be conveyed by proper conveyance in law and to be expressed to be subject to the trusts contained in the last will and testament of Daniel Miles dated at the City of New York the 11th day of October, 1823, and if all three of the Trustees shall at any time have ceased to be such by death, resignation or removal as the case may be before a new appointment and conveyance, then the said Judges to appoint three new Trustees to whom the Trustee or Trustees declining or removing or the heirs of the last surviving Trustee are to convey as aforesaid and so from time to time forever. And in case of any defect of power to enforce the preceding provisions I confide this object to the Courts exercising equity or chancery powers in said county and state, or for want thereof to the Legislature, trusting that they will regard my objects with favor and will aid the accomplishment thereof."

The records of the Probate Court of Cuyahoga County show that on May 30, 1827, Jonathan Fisher, John Shaw and Nehemiah Allen were duly sworn according to law as Trustees under the will; that on October 8, 1835, John Shaw, deceased, was succeeded by Paul P. Condit as Executor and Trustee in place of said John Shaw, deceased.

On May 4, 1842, the Probate records show the following:

"To the Honorable Court of Common Pleas of Cuyahoga County and State of Ohio: The undersigned executors and trustees under the last will and testament of Daniel Miles, formerly of Newburgh in said county, respectfully resign from said trust and all powers under said will and under any appointment by said court. Cleveland, Ohio,

October 14, 1841. Jonathan Fisher, Nehemiah Allen, P. P. Condit. Witness: H. V. Willson. Which is accepted by the Court."

On October 14, 1841, Jonathan Fisher, Nehemiah Allen, Paul P. Condit, as executors and trustees of Daniel Miles, by quitclaim deed, recorded March 24, 1842, quitclaimed and released all right and title which said trustees had in said property to "the heirs at law of said Daniel Miles." During ninety years thereafter title to the property covered by the petition in this case as well as the title to all other parcels covered by the will of Daniel Miles has been many times transferred and mortgaged by many individuals and corporations.

On February 11, 1930 an application was made to the Court of Common Pleas of this county by James H. McCall, Joseph A. Schmitt and Charles E. Day for the appointment of trustees under the will of Daniel Miles, for the purpose of carrying out the trust created by said will, and on February 11, 1930, ten of the twelve Judges of the Court of Common Pleas of Cuyahoga County of Ohio, appointed as trustees of the estate of Daniel Miles, deceased, the following: James H. McCall, Frank X. Schaut and Charles E. Day, with full power and authority to act under the terms and provisions of said will. A certified copy of the journal entry from the Court of Common Pleas, showing the above appointment having been filed in Probate Court on March 10th, 1930, the last above named trustees filed application for return of trusteeship and thereupon the Probate Court ordered, adjudged and decreed that the said James A. McCall, Frank X. Schaut and Charles E. Day be appointed Trustees under the last will and testament of the said Daniel Miles, deceased, upon their giving bond in the sum of Two Thousand Dollars, and the records show that the appointment was accepted.

Subsequent to their appointment said trustees made an application to the Probate Court on April 28th 1930 for authority to enter into contract engaging the services of Robert L. Carr and the firm of Howell, Roberts and Dun-

can as attorneys, to "render their services upon a contingent basis, to advise, aid and assist the trustees in their efforts to recover the property of said estate. Said attorneys to receive as compensation for their services to said estate and to said trustees thirty-three and one-third percent of any property or funds recovered by said trustees through the efforts of said attorneys. Said attorneys to receive no compensation for their services if no recovery of money or property is had."

Upon the last named date this contract for services of attorneys with compensation as set forth therein was approved by the Court.

On August 6th, 1930, a petition was filed by the Trustees against the defendant company, praying as above set forth, that the property of the defendant company be "held and decreed to be subject to the trust created by the said will of Daniel Miles and the right of the plaintiffs as such trustees adjudged and determined to be superior to any claim of the defendants or either of them; that the alleged rights and claims of defendants be required to be set forth, and that they be adjudged to be subject to and inferior to said trust estate, and that the trust estate provided by said will to attach to said premises be adjudged and decreed a valid and subsisting trust, and that plaintiffs be decreed to have the right and title to said property as such trustees for the uses and purposes of said trust, and that defendants be excluded from exercising any ownership or control over said property inconsistent with said trust estate, and that they be granted all other and further relief to which they may be entitled in equity."

This cause has been argued with great learning and ability. Many interesting questions of law have been discussed and argued by learned counsel on both sides. Elaborate briefs citing numerous cases were prepared with great care by counsel. However, in the view which the Court has taken of the merits of the cause, it is not necessary for us to inquire into more than one legal phase of this matter, and we shall therefore confine ourselves

to the discussion of the sole question of whether this action has been brought by the proper parties.

In the case of *Miles* v. *Fisher,* 10 Ohio 1, Lane C. J. said:

"Much industry and learning have been devoted to the investigation of the various questions arising in this case, and the time probably will come which will render their examination necessary."

This was an action in ejectment brought by the Miles heirs against the trustees named in the will.

And further, on page 4, in his opinion the Chief Justice said:

"If the trusts can be supported, they will be enforced in chancery, at the suit of the *cestui que trust.*"

And this Court believes that this pronouncement of the Supreme Court of this state of ninety years ago is sound legal opinion as applied to the facts existing at this time.

From a perusal of the Will of Daniel Miles, deceased, and the briefs in the case, as well as from arguments of counsel for the plaintiffs and defendants in this case, we learn that the three plaintiffs who bring this action as trustees under the Will of Daniel Miles, deceased, do not claim to be *cestui que trust,* and there is nothing to indicate that said plaintiffs were primarily actuated by a desire to establish charitable trusts under the Will "for the support of common schools or for the support of the Gospel in the Township of Newburgh," as provided in the Will of Daniel Miles; and since subjecting the estate to charitable trusts for said purposes would effect the title to some hundred separate parcels of real estate in this city, which, with the improvements, are valued at several millions of dollars, the Attorney General should be a party.

It seems to be well settled law, both in this state and elsewhere, that charitable trusts are enforced for the benefit of the public generally, and in accordance with established principles of public policy. The legislatures of many states have enacted laws providing that the at-

torney general may bring actions to enforce the performance of charitable trusts, and the State of Ohio has such a law which we believe should be invoked in the instant case.

Section 340, General Code, provides as follows:

"Action to enforce performance of charitable trusts. The attorney general shall cause a proper action to be instituted to enforce the performance of a trust for charitable and educational purposes, and to restrain the abuse thereof, if he deems such action advisable, or, if directed so to do by the Governor, Supreme Court, the General Assembly, or either House thereof. Such action may be brought in his own name, on behalf of the state, or in the name of the beneficiary of the trust, in the Court of Common Pleas of Franklin County, or in the Court of Common Pleas of any county, wherein the trust property or any part thereof is situated or invested. The attorney general may refuse to institute such action except when directed by the Governor, the Supreme Court, or the General Assembly, or either branch thereof, unless some responsible freeholder of the state becomes relator in the cause and liable for the costs thereof. No such action shall abate or discontinue by change of officer, but shall be prosecuted to final judgment or mandate as if no change had occurred (R. S. 205)."

In *Kemper* v. *Trustees of Lane Seminary*, 17 O. 293, at the bottom of p. 328, we find the following:

"This shows that, however great may be the wrong complained of, *there is much propriety in requiring suits of this nature to be carried on and conducted in the name only of a public officer,* who may lawfully represent the whole community, or at least that portion of it who are interested equally with the complainant."

Again, in *Miller* v. *Teachout*, 24 O. S. 525, at p. 535, we find the following:

"If the trustee shall then fail to execute the trust, or should he abuse his power, or its exercise at any time become impossible, a more proper motion will arise for the heir, or attorney general, to invoke the interposition of the courts. The question that may then arise in

connection will not need to be, nor indeed ought they to be now anticipated."

This Court does not hold, nor does the law provide, the sole right and duty in the attorney general of the state to bring actions to enforce a general charitable trust, but the Court does hold that where there are many conflicting interests of such compelling importance arising by reason of the fact that real estate amounting to millions of dollars in value and in the largest city of the state, and where such institutions as the common schools and the churches are involved, as well as private interests of such magnitude, that equitable interests can be better served in an action brought in the name of the attorney general of the state, or in the name of the attorney general of the state and the *cestui que trust*.

In 5 R. C. L. p. 360 we find the following:

"This duty of maintaining the rights of the public is vested in the commonwealth, and it is exercised here, as in England, by the attorney general."

In the case of *Trustees* v. *Zanesville Canal Manufacturing Co.* 9 O. 203, at p. 290, the Court said:

"The suggestion that the bill may be sustained at the suit of these plaintiffs, *as the representatives of cestui que trust,* cannot be supported. This Court would entertain a suit for mismanagement brought by the prosecuting attorney, or upon the relation of the public in interest; but such a proceeding would require a bill of structure altogether different from this."

In addition to the Ohio cases, *supra,* there are many cases in other jurisdictions in accord with this principle. The following cases may be referred to: *Nolfe* v. *Buirne,* 132 Tenn. 309; *Dillaway* v. *Barton,* 153 N. E. 13; *Attorney* v. *Prendergast,* 105 N. E. 993; *Holmes* v. *Renard,* 125 S. W. 843; *Schell* v. *Leander Clark College,* 10 Fed. Rep. 10 F (2d) 557; *People* v. *Cogswell,* 129; *Congregational Society* v. *Trustees,* 40 Mass. 148; *Burbank* v. *Burbank,* 152 Mass. 254; *Dailey* v. *City of New Haven,* 22

Atl. Rep. 945; *Stowell* v. *Prentiss*, 323 Ill. 309; *Perin* v. *Carey*, 65 U. S. 465.

In the case of *Dailey* v. *City of New Haven, supra,* at p. 948, the Court says:

"The trust remains, and *the Court will supply trustees upon proper application on behalf of any member of the specified class of beneficiaries.* A charitable trust will not be permitted to fall because the main trustee declines, nor because of delay on the part of the beneficiaries in asking for their rights."

In the Massachusetts case of *Burbank* v. *Burbank,* at p. 256, we find the following:

"Petitioners shall know their interest in these charitable devises and bequests, even that of the general public and of all other citizens of Pittsfield. * * * *but the law has provided a suitable interest in a public charity. It has not left it to individuals to assume this duty,* or even to the Court to select a person for its performance; *nor can it be doubted that such a duty can be more satisfactorily performed by one acting under official responsibility than by individuals,* however honorable their character and motives may be. 'The attorney general' says, Mr. Tudor, 'as representing the crown, is the protector of all persons interested in the charity funds. He represents the beneficial interest; consequently, in all cases in which the beneficial interest requires to be before the Court, the attorney general must be a party to the proceedings.'"

And, finally, in discussing the case the Court said:

"The petitioners have, therefore, no proper standing before this Court."

In the case of *People* v. *Cogswell,* cited above, we find the following language used in the syllabus:

"It is not only the right but also the duty of the attorney general to institute an action in the name of the state to enforce public charities or trusts, or to remedy abuses in their management."

And on page 136 in the opinion of the Court, is the following language:

"The state, as *parans patriae,* superintends the management of all public charities or trusts, and in these matters, acts through her attorney general."

In the case of *Stowell* v. *Prentiss,* the fourth paragraph of the syllabus reads as follows:

"*The attorney general is the proper party, and generally a necessary party,* to proceedings affecting the administration or enforcement of a charitable trust for the public benefit, and he may come into the suit by intervention or be brought in by amendment to the pleadings, when necessary, and, in case he should choose to do so, should be given the right to take charge of that portion of the litigation which relates to the public right."

Persons having no interest as beneficiaries or as representatives of the state cannot maintain an action to enforce or administer charitable trusts, and participation in attorney fees based upon the value of the property impressed with the trust will not constitute such interest as will enable them to maintain the action.

In the present case it is not necessary for this Court to decide any of the other questions covered in the briefs, since the time may come when an action brought in the name of the proper parties may require a court of equity to inquire into these matters. The petition not being brought either by the attorney general or by any of the beneficiaries whom the plaintiffs allege to be in existence, and it being clear from the foregoing authorities that the proper plaintiffs are not before this Court, the action must be dismissed.