STATE, *to use of* HEISKELL, *v.* FIDELITY & DEPOSIT CO. OF MARYLAND *et al.*   (No. 41.)*

(*Jackson.*   April Term, 1915.)

1. **EQUITY.  Powers of special commissioner.  Loan of money. Compliance with order.**

Where the court ordered that a special commissioner should "for the present lend out all of the funds now in his hands in this cause," such commissioner had no authority to loan moneys collected subsequently to the orders.  (*Post, p.* 311.)

2. **EQUITY.  Special commissioner.  Unauthorized loan.  Adjudication of validity.  Confirmation of report.**

Where a special commissioner made two unauthorized loans, and thereafter made a full report of the transactions of his office to the court, listing the notes which he had taken for such loans, and turning them in, whereupon his report was confirmed, his successor appointed, and himself discharged as commissioner, no objection being raised that the loans were unauthorized until the State sued to enforce the commissioner's and his sureties' liability on two official bonds for his breach of duty, the confirmation of the commissioner's report by the court was not an adjudication that he was authorized to lend the money, since there can be no adjudication without an issue. (*Post, p.* 312.)

3. **EQUITY.  Special commissioners.  Unauthorized loan.  Confirmation by court.  Waiver of irregularity.**

Under such facts a waiver of the irregularity of the commissioner's action in lending could not be charged against the court, as a waiver cannot result from mere inaction.  (*Post, p.* 312.)

*This cause was advanced for hearing in the Supreme Court and was determined at the April term, 1915, at Jackson, Tennessee, on the 3rd day of June, 1915, and the opinion filed with the clerk of the Supreme Court at Knoxville, Tennessee, on June 5, 1915.

State, to use, v. Fidelity & Deposit Co.

4. **EQUITY.** Special commissioners. Unauthorized loan. Con-
donation of irregularity.

Such circumstances did not amount to a condonation of the com-
missioner's wrongful act in making the loans. (*Post, p.* 312.)

5. **EQUITY.** Special commissioners. Unauthorized loans of funds
of wards. Consent of guardian.

Where the guardian of minors, owners of the fund which a special
commissioner lent without authority of the court, consented
to the loans, such unauthorized action of the commissioner
was not validated by the consent to free him and his surety
from liability on his bond, since the fund was not under the
guardian's control, but under that of the court, whose authoriza-
tion of the loans was essential to their validity. (*Post, p.* 313.)

6. **EQUITY.** Special commissioners. Loans. Compliance with
order.

Where the court, in authorizing a special commissioner to loan
funds in his custody, decreed that he should take for the note
of the borrower with two good and solvent sureties thereon,
or good collaterals, such sureties or collaterals to be approved
by the court, and the commissioner took but one surety, whose
name was not submitted to the court, and who was not ap-
proved, and took no collaterals, there was a breach of duty on
the part of the commissioner subjecting him and his surety to
liability on his bond. (*Post, p.* 313.)

7. **EQUITY.** Special commissioners. Loan. Order of court.
Duty of compliance.

Where, previous to loaning funds in his custody by authority
of the court, a special commissioner did not read the order
directing the loan, and that the securities be reported, but
supposed that it was in the usual form, permitting him to
approve the securities for the loans, his lack of knowledge
of the contents of the order could not excuse his failure to
comply therewith, nor was the failure of the solicitor for the
complainants to mention to him the special direction of the
order, when notifying him of it, any excuse, since it was the duty

State, to use, v. Fidelity & Deposit Co.

of the commissioner to read the order to ascertain his authority. (*Post, p.* 313.)

8. **EQUITY. Special commissioners. Loan. Noncompliance with order. Sureties.**

Where a special commissioner, in lending funds, failed to comply with the order to take two good sureties, and took but one, · the fact that the principal and the one surety continued solvent until some months after the commissioner's settlement did not free him and his surety from liability on his bond on the ground that no harm had been done by his disobedience of the order; since, had he taken two sureties, the notes might have been collectible after the insolvency of the principal and the surety actually taken because of the solvency of the second surety. (*Post, p.* 314.)

9. **EQUITY. Special commissioners. Liability for improper loan. Excuses.**

Where a special commissioner, in loaning funds by order of the court, failed to comply therewith as to the number of sureties he should take, his honesty and sincerity could not excuse his dereliction, since, if he knew the terms of the order, and had doubt as to its meaning, he should have applied to the court for instructions, while, if he failed to examine the order, and had no knowledge of its terms, he had to bear the consequences of his negligence. (*Post, p.* 315.)

10. **EQUITY. Special commissioners. Surety. Liability.**

Where a special commissioner's bond was conditioned that he should well and faithfully discharge his duties as commissioner, and he made full report of his commissionership, listing notes which he had taken when lending funds in his custody, either wholly without authority or on terms not authorized by the court, which report was confirmed, such settlement of the commissioner was not a performance of every duty which the surety on his bond had obligated himself to secure, since a loan of money by the commissioner without authority was a failure to discharge the duty incumbent upon him to hold the funds until otherwise ordered by the court, while, if the loan

132 Tenn.20

State, to use, v. Fidelity & Deposit Co.

was on terms other than those ordered, he likewise failed to discharge his duties. (*Post, p.* 316.)

11. EQUITY. Special commissioners. Liability on bond. Identity with that of clerk and master. Statutes.

Shannon's Code, sec. 402, provides that every clerk of court shall enter into bond for $10,000 for the faithful discharge of his duties. Section 403 directs that a bond shall be executed for $5000 conditioned to account for all sums arising from taxes on suits, etc. Section 404 provides that the courts may also require their clerks to give bond to cover property which may come to their hands as special commissioners. Section 405 provides that the failure of the clerk to execute the special bond provided for by section 404 shall not subject him to any penalty, but the court may confide the particular business to others who will give the required security, and, in the absence of such special bond, the clerk and his sureties will be liable on the clerk's regular official bond for all property with which such clerk may be chargeable as special commissioner. A commissioner, who was also clerk and master, made his settlement as clerk, and he and his sureties were thereafter discharged from liability on his bond as clerk and master. Thereafter, acting as commissioner, he made an unauthorized loan of funds in his hands, and in the State's suit to enforce his bond the surety contended that the office of special commissioner was an integral part of that of clerk and master, and that when such commissioner ceased to be clerk he likewise ceased to be commissioner, so that the surety company was not bound for his future acts, and was not liable for the loans he made after his settlement. Laws 1852, ch. 164, not included in the Code, made the office of commissioner a part of the office of clerk. *Held*, that, while the statutes in a certain sense annexed the office of special commissioner to that of clerk, since they entitled the clerk to perform the duties of the office of commissioner and to receive its emoluments if he would execute a special bond under section 404, Shannon's Code, nevertheless there was no merger of the two offices, and, the duration of the appointment of a special commissioner

State, to use, v. Fidelity & Deposit Co.

not being limited by law, it might continue beyond the term of office of clerk if a successor to the commissionership were not appointed by the court when the individual ceased to be clerk. (*Post, p.* 316.)

Acts cited and construed:  Acts 1849, ch. 150; Acts 1852, ch. 164.

Cases cited and approved:  State v. Cole, 81 Tenn., 367; Williams v. Bowman, 40 Tenn., 679.

Case cited and distinguished:  State ex rel. v. Blakemore, 54 Tenn., 638.

12. **EQUITY.  Liability of surety on bond.  Effect of additional bond as commissioner.**

Shannon's Code, sec. 405, provides that the court may take an additional bond from the clerk and master to secure the performance of his duties as commissioner, and that the clerk and his sureties shall be liable upon his bond as clerk, in the absence of such special bond, for his defaults as commissioner. Upon the expiration of a clerk's term of office a new bond was taken securing the performance of his duties as commissioner, and, when the surety on his bond as clerk was sued for a default as commissioner, it contended that the bond as clerk was displaced by the bond as commissioner, and that it was not liable on the bond securing the performance of the clerk's duties as such for his default as commissioner, subsequent to the taking of the new bond. *Held,* that the bond to secure duties as clerk was not displaced, in so far as it secured the commissioner's duties, since a direct order of the court to displace a bond is necessary, while the taking of the additional bond authorized by the statute could not harm the surety, as it operated to make the liability of the surety on the bond of the clerk for his default as commissioner secondary to its extent. (*Post, p.* 321.)

Code cited and construed.  Sec. 402 (S.).

13. **EQUITY.  Liability of surety on bond.  Order of court on settlement.  Statutes.**

Where the surety on the bond of a clerk of court, which Shannon's Code, sec. 405, provided should secure the performance of such

State, to use, v. Fidelity & Deposit Co.

clerk's duties as special commissioner in the absence of a special bond for that purpose, was sued for a default of such clerk as commissioner after his term as clerk had expired, and the court had made an order releasing him from liability on his "bonds," the surety's contention that the order released the clerk from his bond and liability as special commissioner, so that the surety was not liable for his defaults as such, was untenable, since the order referred only to the bonds required by sections 402 and 403 of a clerk, as such, his official bond, and his revenue bond. (*Post*, p. 322.)

Code cited and construed:   Sec. 402  (S.).

## FROM SHELBY.

Appeal from the Chancery Court of Shelby County. —T. H. HEISKELL, Chancellor.

JOHN JOHNSTON and T. K. RIDDICK, for appellants.

R. P. CARY, G. J. McSPADDEN and BIGGS & EVANS, for appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The bill in this case was filed to recover on the bond of T. B. Caldwell, and his sureties, as special commissioner of the chancery court of Shelby county. There were two bonds, one in the penalty of $10,000, executed by the Fidelity & Deposit Company, and another of $5,000, executed by T. B. Crenshaw and C. D. M. Greer as sureties. The chancellor decreed in favor of com-

plainants, and the defendants have appealed to this court and assigned errors.

The gravamen of the bill was that Mr. Caldwell, as special commissioner, had, in violation of his duty, loaned certain moneys arising out of a sale of real estate in the case of *Overton v. Overton,* pending in the said chancery court.

It is first charged that he had no authority whatever to lend these moneys; secondly, if he had authority, he was directed in the order to secure the loan with the name of two sureties, and to submit the soundness of these sureties to the judgment of the court before paying out the money. It is also charged that the money was lent by him to persons who were his partners in a large business deal, and so practically for his own use; that these parties were on the brink of failure when the money was loaned to them, and soon thereafter failed.

There were two orders made concerning the lending of money by the commissioner. Before these orders were made the land above referred to had been ordered sold for reinvestment, and brought about $30,000, the first payment $5,000 in cash, and the remaining payments through a series of years divided into notes of about the same amount.

The first order to lend money was made on June 18, 1906. It recited that the purchaser had made further payments to the commissioner, that the commissioner had been unable, up to that time, to find any piece of

real estate suitable for investment of the proceeds, and continued:

"It is therefore accordingly ordered, adjudged, and decreed that the said T. B. Caldwell, commissioner, shall, for the present, lend out the funds now in his hands at six per cent. interest per annum, to some responsible individual or individuals, corporation, or corporations, taking therefor the promissory note of the individual or individuals, corporation or corporations, to whom said fund is loaned, with good and solvent sureties thereon, or good collateral; said sureties or collaterals to be approved by said commissioner, payable thirty days after demand, with interest from date until paid. Said commissioner will report the loan or loans made by him under this order."

The next order was made on June 25, 1907. This order recited that further payments had been made to the commissioner on account of the unpaid purchase money, and that he had been unable to find any real estate suitable for reinvestment of the proceeds, and then went on:

"It is therefore further ordered, adjudged, and decreed that the said T. B. Caldwell, commissioner, shall for the present lend out all of the funds now in his hands in this cause at six per cent. interest per annum, to some responsible individual or individuals, corporation or corporations, taking therefor the promissory note of the individual or individuals, corporation or corporations, to whom said fund is loaned, with two good and solvent sureties thereon, or good collaterals.

State, to use, v. Fidelity & Deposit Co.

said sureties or collaterals to be approved by the court, payable thirty days after demand, with interest from date until paid. The said commissioner will report the loan or loans made by him under this order."

The first loan in controversy, one for $3,500, was made in 1909, about two years after the orders were made, and the second, for $7,500, was made in 1911, about four years thereafter.

The first question to be determined is whether either of the orders authorized a loan of moneys collected subsequent to the making of the orders. It is insisted in behalf of the defendant Caldwell that the orders continued to speak every day after they were made as to any moneys that might at any time thereafter be in his hands, although they had come into his hands from subsequent collections on the purchase money. In support of this proposition we are referred to a case wherein it was held that an order made by the trial judge directing the attorney-general to prefer an indictment against certain parties charged with crime was effective even at the next term of the court. We do not think this precedent is applicable. It might very well be that the court would direct moneys already in the hands of the commissioner to be lent out temporarily, but would refrain from making directions on this subject respecting installments to be collected years afterwards. In short, it would be very much more provident on the part of the court to refrain until the money should be in hand or was soon to be realized. We think the language "for the present" and

"now in hand" indicates a clear restriction to the moneys then in the hands of the commissioner.

It necessarily follows that when he made the two loans complained of he acted in violation of his duty.

It is said, however, that in 1912 he made a full report of the transactions of his commissionership to the court, and therein catalogued the notes which he had taken, and turned in the notes, and that his report was confirmed, a successor was appointed, and he was discharged from further duties in respect of such commissionership. It is further said that no objection was raised on the subject at the time, and not until the present bill was filed. There is nothing in the record showing that any objection was made until the time stated, and the other facts are found in the record in substance as stated; but the order expressly reserved all matters not therein "specifically ordered."

It is insisted that these facts show an adjudication in favor of the commissioner that he had acted correctly; at all events, a waiver of the irregularity. There could be no adjudication without an issue, and a waiver cannot be charged against the court from mere inaction. Nor do the facts stated amount to a condonation of the commissioner's wrong. It was thoroughly in harmony with every right of the commissioner, and with the rights of the persons entitled to the fund, that the court should receive the notes notwithstanding the fault of the commissioner, since thereby the rights involved would be secured as far as the notes might serve such end. The risk, however, in the meantime,

would not be on the owners of the fund, or the duty of active diligence on the court, but these would rest upon the commissioner. He is presumed to have known that he had loaned the money without authority, and that the obligation lay on him to make the injury good.

It is insisted that Mr. Goodbar, the guardian of the minors; the owners of the fund, knew that the loans were being made and offered no objection. He denies this. But let it be assumed that he did consent; the result would be the same, because the fund was not under his control, but under the control of the court.

But, if we assume that the orders did authorize the lending of the money, the result must be the same. The last order would control. It required that two good and solvent sureties should be taken on the notes or good collaterals, "said sureties or collaterals to be approved by the court." Adopting the most favorable view of the record, only one surety was taken, if any was taken at all, and the name of this surety was not submitted to the court, nor was he approved by the court. There were no collaterals, so here was a clear breach of duty on the part of the commissioner. The same reasons stated in respect of the report and settlement of the commissioner must apply in this aspect of the case.

It is insisted that he was not bound to follow this order. He was appointed clerk and master and special commissioner of the court in the year 1900, and continued in the office of clerk and master until the fall of 1906. At that time he was succeeded as clerk and mas-

ter by Mr. Lamor Heiskell, but retained his office of special commissioner in the *Overton Case*. While he was clerk and master his custom was to read the orders of the court, but, when he ceased to be such and was not with the records, he got out of that habit. So it was he did not read the order of the court directing the lending of the money. He supposed that the order was in the usual form, which permitted the commissioner himself to approve the securities placed on loans. It is insisted for him, in the brief of his counsel, that the solicitor for the complainants in the case notified him of the order to lend the funds, but failed to mention to him the special direction contained in the order concerning the submission of the names of the sureties to the court. There is no evidence to this effect, but if there were it would not make any difference. It was the duty of the commissioner to read the order for himself.

It is next insisted that no harm was done by the disobedience of the order, since the persons who signed the two notes, were solvent, and continued so from the making of the notes until several months after he made his settlement already referred to. The notes were signed by C. D. M. Greer and one Manigan. The weight of the evidence is that they were both solvent, and that Greer continued solvent for several months after the commissioner made his settlement. Do these facts excuse the commissioner for his failure to take two good and solvent sureties as ordered by the court. We cannot see our

way clear to so hold. If the order of the court had been obeyed, then the notes might still be collectible, because of the solvency of the second surety. Moreover, such a decision would result in endless controversies as to whether the action of the commissioner was as good or better than the orders of the court, to say nothing of the absurdity of subordinating the court to the dominance of the commissioner. It is essential to the proper administration of justice that these orders shall be strictly obeyed by the officers of the court.

It is insisted for Mr. Caldwell that he acted with honesty and sincerity. Let this be granted. Such a conclusion, however, must be based on the assumption either that he had knowledge of the order and misconstrued it, or that he did not have knowledge of it. In either event he cannot be excused. If he had doubt as to the meaning of the order, he should have applied to the court for further instructions. If he had no knowledge of the terms of the order, he must bear the consequences of his negligence in failing to examine it. In neither aspect of the case would his honest purposes save him from liability.

The next question arises on the liability of T. B. Crenshaw as surety. His bond was in the following terms:

"T. B. Caldwell, as principal, and C. D. M. Greer and T. B. Crenshaw, as sureties, acknowledge ourselves indebted to the State of Tennessee in the sum of $5,000.

"The condition of the above obligation is such that, whereas the said T. B. Caldwell has been appointed commissioner by the chancery court of Shelby county, Tenn., in the case wherein M. G. Overton *et al.* are complainants and Elizabeth Overton *et al.* are defendants:

"Now, if the said T. B. Caldwell shall well and faithfully discharge the duties of said commissioner during the time he continues therein, or in the discharge of any part thereof, and shall account for and pay over what he receives under the orders and decrees of the court, then this obligation to be void; otherwise to remain in full force and effect."

It is insisted that when Mr. Caldwell made his settlement and turned in the notes he performed every duty for which Mr. Crenshaw had obligated himself as surety. We are unable to assent to this view. If Mr. Caldwell loaned the money without authority, he failed to discharge the duty incumbent upon him to retain the money until ordered by the court to make disposition of it; or, if he loaned the money on terms other than those ordered by the court, he likewise failed to discharge his duty.

We shall now consider the additional points made by the solicitor for the guaranty company.

The chief contention is based on the fact that in the fall of 1906 Mr. Caldwell ceased to be clerk and master, made his settlement which was accepted by the court, and that he and his sureties were by order of the court discharged from liability on his "bonds" as clerk and

master. The contention is that the office of special commissioner is an integral part of the office of clerk and master, and that, when Mr. Caldwell ceased to be clerk and master, he likewise ceased to be commissioner; therefore the surety company was not thereafter bound for any of his acts; hence was unaffected by any liability for the loans he made after he ceased to be clerk and master.

There is apparently some confusion in our authorities upon the subject whether the commissionership is an integral part of the office of clerk and master. It results from the terms of certain statutes and the constructions placed on them by the court. We believe the simplest way to dispose of the matter is to refer to the sections of Shannon's Code bearing on the subject, and then to mention a provision of Acts 1852, ch. 164, which was omitted from the Code. The failure to note the omission of this provision seems to have produced the confusion.

Section 402 provides that every clerk of a court before entering upon the duties of his office shall enter into bond with sufficient surety to the satisfaction of his court, in the sum of $10,000, payable to the State, and conditioned for the safe-keeping of the records, and for the faithful discharge of the duties of his office. The next section directs that a bond shall be executed in the sum of $5,000, conditioned to account for and pay over all sums arising from taxes on suits, fines, and forfeitures "which have come, or ought to have

come to his hands.'' The next three sections read as follows:

"404.   The several courts may also require their clerks to give bond, with good security, in such sum as the court may deem sufficient to cover property or funds which may at any time come to the hands of such clerks as special commissioners or receivers, by appointment of the court or any judge thereof.

"405.   The failure of the clerk to execute the special bond provided for in the last section, shall not subject him to any penalty, but the court may confide the particular business to such other person as will give the required security, and, in the absence of such special bond, the clerk and his sureties will be liable, on the regular official bond, for all property or money with which such clerk may be properly chargeable as special commissioner or receiver.

"406.   The court may also require special bonds to meet particular exigencies, and in a suitable penalty, whenever, in its judgment, the interest of suitors renders it necessary, subject to the provisions of the last preceding section.''

In the case of *State ex rel.* v. *W. H. Blakemore,* 7 Heisk. (54 Tenn.), 638, 653, 654, the court seems, in substance, to have held that Acts 1852, ch. 164, made the office of commissioner a part of the office of the clerk.   This was based upon a comparison of Acts 1849, ch. 150, with the act just referred to.   The fact is mentioned in the opinion that the second section of the act of 1849 requires a special bond as special com-

missioner, and it was said that the very terms of the act showed that this bond was intended as special, not general, but that Acts 1852, ch. 164, seemed to have superadded the duties of commissioner to those of clerk, and declared the office vacant if the clerk should fail to give this bond. The learned justice continues:

"So it is plain that the office of commissioner, under the latter act, is a part of the office of clerk. It is in the discretion of the clerk under the first act to accept or decline the appointment of commissioner; but under the last he has no discretion, but must lose his office as clerk if he declines that of commissioner."

The court adds, in a later sentence:

"There can be no escape from this conclusion, in view of the terms of the third section of Acts 1852, ch. 164, 'that if any clerk in this State shall fail or refuse to execute his bonds as required by the foregoing sections of this act, then and in that case, the court whose clerk thus fails to give bond as above stated, shall forthwith declare said clerk's office vacant, and shall forthwith proceed to fill said vacancy, as required by law in cases of vacancy.'"

But it is to be noted that the Act of 1852 was not carried into the Code, and section 405 practically repeals so much of it as appears in the language last quoted. It is observed from the contents of that section previously given that the failure of the clerk to execute the special bond as commissioner "shall not subject him to any penalty," which means that he will not forfeit his office by failure to give the bond. The

section further provides that the court may confide the business of commissioner to any one else who will give a proper bond, and, in case no such person can be found, then the duties shall be a part of the clerk's duties, for which he will be responsible on his bond. To particularize a little further, the clerk may execute a special commissioner's bond under section 404, and in that case he will be entitled to perform the duties of that office, and to receive the emoluments, and in the event he fail to execute such bond, the court may devolve the duties upon some other person who may give suitable bond, and in case such other person cannot be found, then it will be a part of the clerk and master's duty under his regular official bond. In *State* v. *Cole,* 81 Tenn. (13 Lea), 367, 375, 381, the soundness of *State ex rel.* v. *Blakemore* is doubted. In *State* v. *Cole,* it was not necessary to settle the precise question we have before us, but a perusal of the opinion in that case will show that it is in substantial harmony with the view we have herein expressed. This case approves the earlier case of *Williams* v. *Bowman,* 3 Head, 679, wherein it was held that, while the law did in some sense annex the office of special commissioner and receiver to that of clerk, it did not result in a merger of the former into the latter, and that, the duration of the appointment of special commissioner not being limited by law, it might continue beyond the term of the office of clerk, if a successor to the commissionership should not be appointed by the court. We have other

cases upon the subject, but what we have said contains the substance of all of them.

It is insisted by the guaranty company that the taking of the additional bond for $5,000 executed by Crenshaw and Greer was intended as in lieu of its bond, and for that reason it is exonerated. This contention is based on the argument that, with the bond of the guaranty company outstanding, there was no need of another bond, and the further argument that the order for the new bond indicated, as a reason for its taking, the expiration of Mr. Caldwell's term as clerk and master. Even if it be conceded that there was no need for the additional bond, and that its taking was based on the erroneous assumption, as matter of law, that the expiration of the clerk and master's term rendered such new bond essential, on the theory that the office of commissioner was inextricably bound up with the office of clerk and master, still this would not result in the displacement of the guaranty bond. To effect that purpose a direct order to that end was necessary. Such matters cannot be left to mere inference. Moreover, it was within the power of the court, under section 405 of Shannon's Code, to take additional bonds at any time; besides, the additional bond wrought no harm to the guaranty company, since, as the chancellor correctly held, the result of taking the second bond was to make the liability of the sureties thereunder a primary one to the full extent of its penalty and the liability of the guaranty company to that extent secondary.

It is urged by the guaranty company that when Mr. Caldwell made his settlement as clerk and master in the fall of 1906, and an order was entered releasing him from his "bonds," he was thereby released from his bond as special commissioner. This position is untenable. The bonds referred to were his official bonds as clerk and master required by Shan. Code, section 402, and his revenue bond required by the next section. No reference was had to his bond as special commissioner. That matter was not up for consideration.

The foregoing matters cover all of the assignments of error. None of the assignments being well taken, they must all be overruled.

Defendants will pay the costs of the appeal.