MARY E. COPE, et al. v. HERBERT CLEVELAND COPE, et al.

Eastern Section.    April 17, 1926.

Petition of Certiorari denied by Supreme Court, July 10, 1926.

1. **Words and phrases.  The terms "surety" and "security" are not synonymous.**
   The terms surety and security are not synonymous. While the latter term, includes the former, the use of the latter is a limitation of the form of the security to that of personal and direct liability on the primary obligation, which is much more simple and preferable.

2. **Trusts.  Special commissioner holding funds for investment under court order must invest the funds as required by the order.**
   Where a special commissioner held the funds of a minor under a court order, ordering him to loan the money, "taking good and solvent sureties on the note," and the commissioner loaned the money taking collateral security with the note, but having no sureties thereon, and the maker of the note became insolvent, held that the commissioner and his bondsmen were liable for the money because of the violation of the order.

3. **Special commissioner.  Under sections 5373-5375 Shannon's Code, a special commissioner is liable for twelve and one-half per cent damages for failure to pay upon demand all money in his hands.**
   In an action against a special commissioner and his bondsmen to recover certain money which had been loaned by the commissioner in violation of the court order and lost, held that since the money had not been loaned in compliance with the order, it was figuratively in the commissioner's hands and subject to demand and his failure to pay it over upon demand justified the assessing of the penalty provided by statute.

Appeal from Chancery Court of Knox County; Hon. Chas. Hays Brown, Chancellor.

Affirmed.

Donaldson & Montgomery of Knoxville, for appellant.

Jennings, Saxton & Wright, and Mitchell Long, all of Knoxville, for appellee.

SNODGRASS, J.   The controversy in this cause is raised by a petition filed by a minor, Stella Wayland Cope, through her guardian, Mary E. Cope, to collect from the executor of J. C. Ford, a former Clerk and Master and special commissioner of the court in which the case was tried, and his bondsmen, one of whom is now also deceased, and his executrix, Mrs. Maude K. Wright, being made party as representing him, the other bondsman being W. L. Clapp, to collect $1,375, with interest, and (later by amendment) alleged statutory damages of twelve and one-half per cent.

The present Clerk and Master and his bondsmen were made parties, under the idea that they also were liable by reason of the manner in which he also had dealt with the securities, as successor in office of the said Ford. There is very little, if any, controversy as to the facts.

In the above styled cause there arose the said sum of $1,375, which, as funds of the said petitioner minor, the Clerk and Master as special commissioner was given charge of under certain directions in the court order, as follows:

"In this cause, it appears that the special commissioner has collected the two notes for $1375 each, due respectively to the minors, Louvenia E. Cope and Stella Wayland Cope, said notes having been given in part payment for the shares of said minors in the land sold in this cause.

"It also appears that the said minor Louvenia E. Cope will arrive at the age of twenty-one years on the 2nd day of September, 1919. The special commissioner will, therefore, hold the fund which he has collected on the note due said Louvenia E. Cope, and pay the same over to her, together with interest in full on or after the date she arrives at her majority, upon her execution of proper receipt to the special commissioner therefor.

"It appearing, however, that said Stella Wayland Cope is now only fourteen years of age and will not arrive at her majority for nearly seven years, the special commissioner upon motion of Mary E. Cope, regular guardian of said Stella Wayland Cope, by her solicitor of record, is hereby ordered forthwith to reloan the principal of said note belonging to Stella Wayland Cope, namely $1375, and to keep the same loaned at interest until further orders of the court, taking good and solvent sureties on the note, and paying the interest accruing thereon to Mary E. Cope, regular guardian of said Stella Wayland Cope, in accordance with previous orders of the court made in this cause. The special commissioner will be responsible for the handling of these funds in accordance with the order of his appointment, and all other orders in this cause and as provided by law. The special commissioner and Clerk and Master is allowed one per cent of the fund to be paid to the minor Louvenia E. Cope, when she arrives at her majority."

The said J. C. Ford had theretofore been appointed as special commissioner by the court to carry out the ratified sale of the property in which the funds arose, and to hold the notes which were executed in such sale subject to the further orders of the court in this cause, and it was adjudged that the cause be retained upon the docket for such further proceeding and orders as might become necessary touching the question of the disposition of the funds or proceeds from the

sale, for the use and benefit of the minors, as well as any other necessary or proper order.

It was averred in the petition that the said J. C. Ford did not comply with said order of the court by reloaning said fund belonging to said minor, keeping the same loaned at interest, taking good and solvent sureties on the note as provided therein, but on the contrary disobeyed and violated said order by loaning said fund to one S. R. Rambo, and taking his demand note therefor, on August 13, 1919, without sureties, said note being in words and figures as follows:

"$1375.                                                    No. 1.

"On demand after date, for value received, we or either of us promise to pay to J. C. Ford, Clerk and Master of the chancery court at Knoxville, or his successor in office the sum of thirteen hundred seventy-five and no/100 dollars, with interest from date hereof, in the case of Mary E. Cope, et al. v. Herbert C. Cope, et al. Being for borrowed money under order of court, Book 72, page 190.

"Witness our hands and seals, the 13th day of August, 1919.

"S. R. Rambo.

"Collateral security attached."

After stating the proper entering into of bonds by the said Ford as Clerk and Master, and also as commissioner, exhibited in form and signed by the bondsmen sued, to-wit, W. L. Clapp and T. A. Wright, now deceased, whose executrix was sued, a pro confesso being taken against S. R. Rambo, the petition averred that said J. C. Ford's term of office expired January 2, 1923, and in turning over the office to the present incumbent, R. A. Brown, that the said Ford turned over said Rambo note for $1375, and that petitioner is informed that the same is, and has been since January 2, 1923, in possession of and under control of the said R. A. Brown, now Clerk and Master of the court, he having been, it was alleged, appointed and qualified by taking oath and filing bond on January 3, 1923, exhibiting said bond or copy of the same as Clerk and Master, signed by the National Surety Company of New York.

The fourth section of the petition is as follows:

"Petitioner is informed and believes that at the time said money was loaned by the said J. C. Ford to the said S. R. Rambo the latter was hopelessly insolvent and has been ever since, and that the said J. C. Ford knew or should have known of these facts at the time of making said loan to him, and ever since that time to the date of the death of the said J. C. Ford and that therefore he was negligent in the handling of said fund and particularly so because of his positive violation of the order of the court, requiring him to take good and solvent sureties upon the note when the money was loaned.

"Petitioner is further informed and believes that said S. R. Rambo is now hopelessly insolvent and that nothing, or practically nothing can be realized on said note out of his estate which has been placed in the hands of a receiver in this court, and who has subsequently filed a voluntary petition in bankruptcy in the United States district court for the northern division of the eastern district of Tennessee, at Knoxville.

"Petitioner is also informed and believes that the said R. A. Brown who came into the possession of said Rambo note on January 3, 1923, might have been more diligent in the handling of the same and might have had sureties placed upon said note so as to protect said fund against loss, but that he has wholly failed to do so and has allowed said note to remain without sureties for a period of nearly eighteen months while in his possession and under his custody and control as Clerk and Master of this court.

"Petitioner is therefore advised and avers that both the estate of the said J. C. Ford and his said executrix and his bondsmen upon his official and upon his special bonds, and the said R. A. Brown and his bondsmen on both his official and special bonds are responsible and liable to the said Stella Wayland Cope and Mary E. Cope, her regular guardian, for the amount of said fund, together with all unpaid and accrued interest and reasonable counsel fee to her solicitors for services in fixing this responsibility and liability and enforcing recovery of this fund into the office of the Clerk and Master for her benefit."

The petition sought a decree against all the parties for such fund so loaned. The defendants, Drucilla J. Ford, executrix, Maude K. Wright, executrix, and W. L. Clapp, filed their answer, admitting that petitioner is a minor, whose regular guardian filed the petition, and that her funds, $1375, had been in the hands of the Clerk and Master and special commissioner, J. C. Ford, who undertook to loan said funds under the special order, etc. it was claimed that said Ford did comply substantially and sufficiently with said order; that said funds were loaned to S. R. Rambo, who it was averred at the time of making same was amply solvent and financially good, and that said J. C. Ford at the time required and received from said Rambo collateral security, consisting of notes given by solvent parties, which said collateral notes were secured by mortgages or deeds of trust on real estate, unincumbered, and worth more than the face of said collateral; and it was averred that said action was a substantial compliance with said order.

The bondsmen of said Ford and the execution of his bonds were admitted. It was admitted that said Ford and bondsman T. A. Wright are now dead, and that defendants Drucilla J. Ford and

Mrs. Maude K. Wright were, respectively, the executrix of the estate of each; that the estates of both were solvent; but it was denied that they were either jointly or severally liable for the payment of the amount claimed to be due petitioner. It was admitted that the term of office of J. C. Ford, deceased expired January 2, 1923, and that upon the appointment and qualification of his successor, defendant R. A. Brown, as Clerk and Master, the said J. C. Ford turned over to the said defendant R. A. Brown all of the funds which were in his hands as Clerk and Master, and all the funds, notes and other obligations which were in his hands as special commissioner; and it was averred that after said date, January 2, 1923, the said funds, notes, together with all security which had been given for the payment of said notes, have been in the hands of the defendant R. A. Brown, and that from and after January 2, 1923, for a period of more than a year, the said defendant R. A. Brown had ample opportunity to collect from said S. R. Rambo the amount of said note for $1375, together with interest due thereon, but that the defendant R. A. Brown negligently and carelessly held said note in his possession, although it was past due, and failed and neglected to collect or make any effort to collect said note.

Further answering it was shown to the court that on January 3, 1923, the defendant R. A. Brown executed, as Clerk and Master, a receipt reciting that he had received from the said J. C. Ford, among other notes, the following:

"One note for $1375 executed by S. R. Rambo, with two collateral notes attached thereto as security."

They denied that at the time of the loan to Rambo he was hoplessly insolvent; or that he was insolvent; or that Ford should have known said fact of insolvency; or that such was the fact; or that said Ford was negligent in any manner in the handling of said fund; or that his conduct with reference thereto constituted, or was, any violation of the order under which said fund was loaned.

It was averred that said Rambo at the time of executing said note was solvent and able to pay the same, and that the security placed by the said S. R. Rambo with the said J. C. Ford, deceased, for the payment of said note, is amply sufficient to pay the same.

Further answering it was admitted that the said S. R. Rambo more than a year after said note and collateral was turned over to the said R. A. Brown had become insolvent, but it was averred that no act on their part, or on the part of the said J. C. Ford, had in any way contributed to the loss of the said fund, after it had been loaned. But on the contrary it was averred that, when the defendant Brown accepted said note, together with collateral attached thereto, at a time when from the face of said note he knew it was past due, that the said R. A. Brown became charged with an active duty

to at once collect said note, or else obtain a new note, in accordance with the order under which said fund had been loaned. And it was further averred that from and after January 3, 1923, the said R. A. Brown became liable, both personally and in his official capacity, for the amount of said note; that after said date neither the said J. C. Ford nor any of these defendants had anything to do with said note, nor had any of them the power or authority to take any steps for the collection of said note; and they denied that they were liable for the payment of any cost, or for the payment of any attorney's fee in the matter. They further insisted that at the May term, 1923, the defendant R. A. Brown failed and neglected to make a financial report showing the amount of the various funds in his hands as Clerk and Master, and showing the amount of the various notes in his hands, by whom given, and when due; and it was averred that had such report been made, and had been properly inspected, that it could have then been determined whether or not said note of S. R. Rambo was a good and solvent one; and it was further insisted that said Brown made a report in November, 1923, as Clerk and Master, and listed said note of S. R. Rambo as among the notes held by him as Clerk and Master, and that said note was treated by the said R. A. Brown as a note of a good and solvent party, and as being worth one hundred cents on the dollar; that during all of such time from and after January 3, 1923, up until May or June, 1924, the said R. A. Brown could have collected said note dollar for dollar, together with interest due thereon, had he made any effort to do so. It was therefore denied that these respondents were liable to any extent on said note, or upon the averments of the petition in this cause.

Respondent Brown filed an answer and admitted his appointment and qualification as Clerk and Master, and his conduct and responsibility for that office since said 3rd day of January, 1923, and that the original note of Rambo, with two notes as collateral, were turned over to him as Clerk and Master, one of the notes that of James R. Julian and Mellie Julian, dated July 31, 1919, due thirteen months after date, in the sum of $200, and the other a note of N. O. Goddard and Lola Goddard, dated March 5, 1922, due six months after date, in the sum of $1200; that he understood at the time these notes were turned over to him that said notes were being held by said Ford as Clerk and Master, and that they were being properly turned over to him as the successor in office of the said J. C. Ford; that said note, on its face, is made payable to the said Ford as Clerk and Master, and being unfamiliar with the numerous orders made by the court in the above styled cause, and particularly with the order appointing said J. C. Ford special commissioner to loan said fund involved on this petition, respondent accepted said property under the impression that it was his duty as Clerk and Master so to do, and

with the intention of accounting to the court for his acts in the premises.

It was further averred that said note was payable on demand, and that those rightfully entitled to the proceeds thereof never at any time criticized said loan to the said S. R. Rambo by the said J. C. Ford as special commissioner, until the affairs of the said S. R. Rambo became involved in the early summer of 1924; that the said Rambo was regarded as a man of reliability and responsibility financially, and until his affairs became involved in the late spring or early summer of 1924 no one questioned his solvency or ability to pay his obligations, so far as respondent is advised; that said two notes attached as collateral on their face purported to be secured by mortgages on real estate, which, if true, would have amply secured the note to which they were attached as collateral, but that since this controversy has arisen respondent has investigated and ascertained that the collateral note of the said James A. and Mellie Julian was paid to the said S. R. Rambo on August 13, 1920, and that the Goddard note had been paid to the said Rambo on December 12, 1922, both of said notes having been paid to said Rambo previous to the date of respondent's appointment and qualification as Clerk and Master.

It was denied that respondent had ever been appointed or had assumed to act as special commissioner.

It was also averred that originally there had been attached to said note as collateral the note of one Hammontree in the sum of $1250, which note was returned to said Rambo by said Ford on or about March 28, 1922, and that said Goddard note was attached as collateral in its place and stead.

It was further averred that said notes were erroneously turned over to him by said Ford, and that he accepted said property from said Ford under the erroneous impression that it was property held by said Ford as Clerk and Master; that he only recently discovered that said Ford held said property by appointment of this court as special commissioner; that respondent was not the successor in office of said Ford as such commissioner, nor in any cause in which said Ford had been appointed; that the office of Clerk and Master and that of special commissioner are separate and distinct, both of which can only exist through special appointment by this court; that the office of special commissioner does not terminate with the expiration of the office of Clerk and Master, but continues in the special appointee until terminated by express order of the court, or by the conclusion of the duties of said appointment; and that no successor of said Ford has ever been appointed, as the records will disclose.

Respondent denies that he was in any manner negligent in the handling of the notes, even if he owed any duty to make collection

thereof, and expressly pleads as a complete bar to any liability alleged against him the fact that, never having been appointed the successor in office of the said J. C. Ford as special commissioner in the above styled cause, he was not charged with the responsibility of collecting said note, and owed no duty to petitioner or anyone else in connection therewith; that said note and collateral, having been erroneously deposited with him, he was only charged with the responsibility of accounting for said property, and he accordingly reports these facts to the court, and prays the instruction of the court as to what disposition to make thereof, averring that, being under the impression that said note was properly turned over to him, he had on the 22nd day of December, 1923, collected $41.25 from said Rambo as interest, and had the same in his hands, as to which he also desired instruction. It was denied that petitioner was entitled to any decree against him.

Proof was taken and the cause went to trial upon the whole record, including that of the original cause showing the appointment of J. C. Ford, Clerk and Master of this court, and as special commissioner in this cause, and his bonds made and filed as such, and the appointment of R. A. Brown as Clerk and Master of this court, and his bond made and filed as such, upon consideration of all of which it was adjudged and decreed by the court as follows:

"That petitioner, Stella Wayland Cope, by her next friend and regular guardian, Mary E. Cope, recover of the defendant Drucilla J. Ford, as executrix and personal representative of the estate of J. C. Ford, deceased, and of the bondsmen of said J. C. Ford as Clerk and Master, and as special commissioner in this cause, including defendant Maude K. Wright, as executrix and personal representative of T. A. Wright, deceased, William L. Clapp and S. R. Rambo, the sum of $1375 with interest thereon at the rate of six per cent from the 13th day of August, 1923, together with twelve and one-half per cent damages as provided by statute, making a total of $1706.20, together with all the costs incident to the filing of said intervening petition; for all of which execution against said Drucilla J. Ford, executrix and personal representative, and all said bondsmen of said J. C. Ford, deceased, is awarded; to which action of the court the said Drucilla J. Ford, executrix, etc., Maude K. Wright, executrix, etc., and W. L. Clapp duly excepted.

"It is further ordered, adjudged and decreed by the court that the defendant, Drusilla J. Ford, as the executrix of the estate of J. C. Ford, deceased, be and she is hereby subrogated to all the rights of the special commissioner in and to the note executed by the said S. R. Rambo to the said J. C. Ford, deceased, as special commissioner, on the 13th day of August, 1919,

and to all collateral pledged by the said S. R. Rambo to the said J. C. Ford, deceased, for the payment of said note, and the Clerk and Master of this court is authorized and directed to turn said note executed by the said S. R. Rambo, as aforesaid, and the collateral placed by him with said note for its security, over to the said Drucilla J. Ford.''

"The petition was dismissed as to defendant R. A. Brown, it being adjudged that he was never appointed commissioner to handle said funds, was never qualified and never attempted to act as such.

"To which action of the court the defendant Drusilla J. Ford, as executrix, and Maude K. Wright, as executrix and W. L. Clapp excepted. From the foregoing decree the last named defendants prayed an appeal to the next term of the Supreme Court at Knoxville, which was granted, and such appeal perfected. And from the decree dismissing the cause as against R. A. Brown the petitioner prayed and was granted an appeal, upon the execution of a bond, but the same was not perfected. The cause, being in this court, the defendants who did perfect their appeal have assigned errors as follows:

"First: The court erred in rendering a decree in the sum of $1706.20 or in any amount against the appellate Drusilla J. Ford, executrix for the said J. C. Ford, and against his bondsmen and in taxing them with the costs under the intervening petition. The record does not disclose any violation of his trust upon the estate of the said J. C. Ford which could legally authorize a judgment against him or his bondsmen.''

"Second: The court erred in rendering a decree for twelve and one-half per cent damages, being in the nature of a penalty because under the facts disclosed by the record there was no such dereliction of duty or breach of trust shown on the part of the said J. C. Ford, deceased, as would warrant a court of equity in imposing such penalty.''

We think the Chancellor was correct, and that there was no reversible error in his decree. The order appointed J. C. Ford as special commissioner and placed him in charge of the funds of the petitioner as such, and while no direction was given the commissioner as to the inclusion of any attorney's fees in the note, he gave specific direction as to the kind and form of the security to be taken, which, without authority, he disregarded.

It is insisted that the taking of the collateral security was a substantial compliance with the order. We do not think it was. He was directed to reloan the fund he had in his hands, and to "keep the same loaned at interest until further orders of the court, taking good and solvent sureties on the note.''

The terms surety and security are not synonymous. While the latter term, as contended, includes the former, the use of the latter is a limitation of the form of the security to that of personal and direct liability on the primary obligation, which is much more simple and preferable, especially in transactions of this kind, as less likely to be involved in difficulty as to investigation and complication as to questions of remedy or collection.

At any rate the only answer that the said J. C. Ford could have made to any demand upon him for the funds, would have been to produce them, or show that they had been loaned out in conformity with the directions of the court. While the court had power and discretion to choose the form of the security, he did not entrust it in this instance to the commissioner, but exercised it himself; therefore deriving all his powers from the decree defining his duties, (Carnes v. Polk, 4 Caldwell, 92; Walker v. Walker, 4 Caldwell, 309), he was of course without power to substitute other or different form of the security. To do so was negligence to say the least, and to take the note to the Clerk and Master, even though he himself was such officer, was likewise in violation of the implied provisions of such order; which served also to mislead his successor in the Clerk and Master's office, resulting in his failure to investigate the real situation, which might have resulted in its rectification had the real facts been known. As it was, supposing himself to be the proper custodian of the notes, and relying upon the apparent solvency of the supposed authorized security, the consequences of the disobedience to the original order was not discovered until the revelation of the disastrous insolvency of the maker of the note, S. R. Rambo; and then, too, upon the investigation that this failure brought about, it was discovered that on March 28, 1922 a Hammontree note of $1250 originally filed as collateral to the Rambo note, had been by the said Ford returned to Rambo, and there had been substituted a note by N. O. Goddard for $1200, dated the 5th day of March, 1922. In addition to this it was found that as a matter of fact there was no real estate or other security to the Julian note of $200, and that such note had been paid to Rambo on the 13th day of August, 1920, and that the Goddard note had been paid to him (Rambo) on the 12th day of December, 1922.

The record does not show whether the makers of these collateral notes are now insolvent or the notes collectible, but it does show that an account was opened by the said Rambo with the said J. C. Ford, under which the Hammontree note was credited to his account and the Goddard note charged, and on such record kept by Rambo it was shown that all the collateral notes had been paid to Rambo.

It is perhaps not proper for us to express any opinion as to the collectible status of the said collateral notes, or to indulge in any

speculation as to the possible or probable transactions of the said Brown and Rambo that might effect the validity of the notes now in the hands of the Clerk and Master or transferred to the defendants by the subrogating order in this cause, but it is proper to say that the action of the said J. C. Ford in taking these notes in violation of his instructions has introduced all these questions; and when the money is demanded of him or his bondsmen, irrespective of whether or not the collateral notes are yet collectible, it does not lie in his mouth to insist that petitioner test out all these questions before calling upon him. He cannot thus defend when called to account for the manner in which he has dealt with these funds. The funds, or his compliance with the order of the court, is the only answer he can make to the petition.

The foregoing is an apt illustration of the fact that there is a material difference between solvent sureties on the note and a security effected by the deposit of collateral.

We do not think any actionable negligence has been shown as to the defendant R. A. Brown. The note was a demand note, and it was supposed that the collateral was strengthened by real estate liens, as indicated in the face of the collaterals. The funds were those of the minor, that were directed to be kept loaned. There was no occasion therefore for its collection, and while the note was improperly taken to the Clerk and Master, there appears in this instance to have been no injury particularly effected thereby, as the bondsmen of the special commissioner are the same as those of Mr. Ford as Clerk and Master. Only there was a violation in this regard of the implied directions, which affects the defense of the said Ford or his bondsmen. As Rambo was apparently solvent, and as it appeared the former Clerk and Master had passed upon the supposed solvency of the collateral, we do not think that there was any circumstance shown that would put an ordinarily prudent man upon inquiry. So far as the Clerk and Master was concerned, he had been excused from making the first financial report complained of, and when the November report was made there had apparently nothing intervened to change the situation, which continued until the failure of Rambo.

Had the said Ford been authorized by the court to have taken security in the form he did, and had the two notes now held been filed originally with real estate guaranties, as they purported, it might then be claimed for him, with propriety too, that he had not been negligent. But his negligence consists in the violation of his instructions, which practically amounts to a conversion of the funds, though of course not so intended, and no ratification of his unauthorized action was ever had or approved by any order of the court.

A special commissioner has no authority to lend out funds except upon the order of the court, (State to use of Heiskell v. Fidelity &

Deposit Co. of Maryland, et al., 132 Tenn., 303), and it is axiomatic, therefore, that he could not lend out such funds contrary to such order.

Under the circumstances, therefore, the estate of the deceased Clerk and Master and special commissioner was liable for the twelve and one-half per cent under the statute, for he stood in relation thereto as though the funds were in his hands, and not as having been properly loaned.

Sections 5373, 5374 and 5375 of Shannon's Code provide as follows:

"Against Clerks.—Judgment may be had summarily by motion against the clerk of any court in this State in the following cases:

".(1) Failing To Pay On Demand.—For failing to pay over to the party entitled on demand, money received by him on any judgment, or execution, or paid into court upon a plea of tender, or any other plea, or under an order or rule of court, judgment for the sum so received, with interest, and twelve and one-half per cent damages."

"5375. . . . Special Commissioners.—A special commissioner appointed by the court to sell property, or to receive and collect funds, is, in all cases, liable on motion, in the same way and to the same extent as clerks of the courts."

Without further discussion it appears that neither assignment is sustained by the record, and they are both overruled.

It appears, however, from the record, that the Clerk and Master had in his hands the sum of $41.25, which he says he collected from Rambo as interest on December 22, 1923, and he asked for direction as to the application of this fund, which has apparently been overlooked. In the recovery of interest it was provided in the decree that the same be calculated from August 13, 1923, whereas we think it appears that interest had been collected to December 22, 1923, and the decree should be corrected so as to calculate the interest from said December date, and the said sum of $41.25 be paid to the guardian and credited upon the judgment."

With this modification the decree of the Chancellor is affirmed, and judgment will be entered here against the defendants in accordance with the obligations of the appeal bond, and for costs. The funds will be turned over to the petitioner's guardian, only upon the exhibition of proper bonds covering same.

Portrum and Thompson, JJ., concur.